2014-1492

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

_____

**CARNEGIE MELLON UNIVERSITY,**

*Plaintiff-Appellee,*

v.

**MARVELL TECHNOLOGY GROUP, LTD. AND MARVELL
SEMICONDUCTOR, INC.,**

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the Western District of
Pennsylvania in Case No. 2:09-cv-00290-NBF, Honorable Nora B. Fischer

_____

**BRIEF *AMICUS CURIAE* OF DANIEL B. RAVICHER IN SUPPORT OF
PLAINTIFF-APPELLEE CARNEGIE MELLON UNIVERSITY**

_____

Daniel B. Ravicher
Ravicher Law Firm
2000 Ponce De Leon Blvd, Ste. 600
Coral Gables, Florida 33134
(786) 505-1205

October 27, 2014                    *Counsel for Amicus Curiae*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for *amicus curiae* Daniel B. Ravicher certifies the following:

1.      The full name of every party or amicus represented by me is:

DANIEL B. RAVICHER

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

NONE

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NONE

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

DANIEL B. RAVICHER

Dated: October 27, 2014                     /s/ Daniel B. Ravicher
                                            Daniel B. Ravicher
                                            *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST................................................................................i

TABLE OF CONTENTS......................................................................................ii

TABLE OF AUTHORITIES................................................................................iii

INTEREST OF THE *AMICUS CURIAE*.............................................................1

ARGUMENT.........................................................................................................5

I.     UNANIMOUS JURY VERDICTS IN PATENT CASES DESERVE
       RESPECT.....................................................................................................5

CONCLUSION....................................................................................................10

CERTIFICATE OF SERVICE.............................................................................11

CERTIFICATE OF COMPLIANCE....................................................................12

# TABLE OF AUTHORITIES

## CASES

*In re Lockwood*,
    50 F.3d 966 (Fed. Cir. 1995)..........................................................................7

*I/P Engine v. AOL, Inc.*,
    __ F.3d __ (Fed. Cir. Aug 15, 2014).............................................................9

*Jacob v. City of New York*,
    315 U.S. 752 (1942).....................................................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F. 3d 967 (Fed. Cir. 1995)....................................................................7-8

*Parkervision v Qualcomm*,
    Case No. 3:11-cv-719-Orl-37TEM (M.D. Fl. June 20, 2014)........................9

*Parsons v. Bedford*,
    28 U.S. 433 (1830)......................................................................................7

## CONSTITUTION

U.S. Const. Amend. VII...................................................................................*passim*

## OTHER AUTHORITY

Alexander Hamilton, *The Federalist No. 83,*
    Independent Journal 289 (1788).....................................................................6

*Letter from Thomas Jefferson to Thomas Paine* (July 11, 1789),
    The Papers of Thomas Jefferson 15:269 (Julian Boyd ed., 1958)...................5

William Wirt Henry, *Patrick Henry: Life, Correspondence and Speeches*,
    3:594 (1891)...................................................................................................5

## INTEREST OF THE AMICUS CURIAE[1]

I, Daniel B. Ravicher, Esq., submit this *amicus brief* pursuant to Federal Rule of Appellate Procedure 29(a) to provide the Court with a public interest and academic perspective on the issue of the level of respect jury verdicts should be given in patent cases.

I am Executive Director of the Public Patent Foundation (PUBPAT), a not-for-profit legal services organization I founded in 2003 that represents the public interest in the patent system. Through PUBPAT, I represented the successful plaintiffs in the *Association for Molecular Pathology v Myriad Genetics* Supreme Court case that ruled human genes can not be patented. I also successfully challenged patents on human stem cells, AIDS drugs, Internet standards, open source software, and other technologies in order to protect the public's right to access them. I represented the plaintiffs in the *Organic Seed v Monsanto* case challenging patents on genetically modified seed, defended governmental entities, non-profits and small businesses from meritless patent threats made by non-practicing entities, pursued pharmaceutical and consumer products companies for violations of consumer protection statutes, and authored several briefs to the

---

1 Both Plaintiff-Appellee and Defendants-Appellants have consented to the filing of this brief. I have no financial interest in any of the parties. No party or counsel for a party has authored any portion of this brief, and no one other than me has made a financial contribution to it.

Supreme Court, this Court, and various other courts on issues of patent and technology law. All of my work through PUBPAT has been provided *pro bono*.

In addition to my public service work, I am also Lecturer in Law at Benjamin N. Cardozo School of Law, where I teach the Patent Practicum, supervise independent research, and am a member of the faculty of Cardozo's Intellectual Property & Information Law Program, which was ranked the #1 intellectual property program in the entire northeast in 2013. I am also Adjunct Professor of Law at the University of Miami School of Law, where I teach the Entrepreneurship and StartUp Law course.

I write and speak frequently on patent law and policy, including testifying twice as an invited witness before Congress on the topic of patent reform and repeatedly consulting with the United Nations and its related entities on patent issues impacting access to essential medicines. I was named Appellate Lawyer of the Week by the National Law Journal, appeared as a guest on the PBS NewsHour, have been quoted in the *New York Times*, the *Wall Street Journal*, *Bloomberg*, *Nature* and countless other publications, and presented at dozens of conferences and public events on issues relating to patent and technology law.

I received my law degree from the University of Virginia School of Law, where I was the Franklin O'Blechman Scholar of my class, a Mortimer Caplin

Public Service Award recipient and an Editor of the Virginia Journal of Law and Technology. I received my bachelors degree in materials science *magna cum laude* with University Honors from the University of South Florida. I am admitted to the United States Supreme Court, this Court, the Courts of Appeals for the 2nd and 11th Circuits, the District Courts for the Southern and Eastern Districts of New York and the Southern and Middle Districts of Florida, the States of New York and Florida, and the United States Patent and Trademark Office.

Prior to founding PUBPAT, I was associated with Brobeck, Phleger & Harrison LLP, Patterson Belknap LLP, and Skadden, Arps, Slate, Meagher & Flom LLP, all in New York. In private practice I represented both patent holders and parties accused of, or concerned about, patent infringement. I also prosecuted patent applications, negotiated patent licensing agreements, and litigated patent claims both for and against patent holders.

As discussed further herein, overturning jury verdicts in patent cases is extremely damaging to the public interest because it further distances patent law from the American people. Jury verdicts in patent cases should only be overturned in the most extreme of circumstances, where they are indisputably unsupportable by the evidence. To do otherwise threatens to erode public support for the patent system because the American people are justified in becoming cynical of a system

3

where their time and effort spent reaching a unanimous decision in complex and lengthy patent cases is rendered for naught because a judge, or panel of judges, disagreed with their verdict. I have an interest, as a public service patent attorney and patent academic, in suggesting that the Court consider mindfully and deliberately the reasons why jury verdicts should be respected in patent cases.

# ARGUMENT

This Court has systematically marginalized juries in patent cases to the point where they face figurative, if not literal, extinction. This is a dangerous course, because failing to ensure everyday Americans play a prominent role in the patent system not only conflicts with the Seventh Amendment, it risks eroding the foundation of public support for the patent system, rendering it politically unstable and subject to collapse. The Court should thus deliberately and earnestly consider the proper level of deference to be given jury verdicts and ensure they are respeccted.

## I.  UNANIMOUS JURY VERDICTS IN PATENT CASES DESERVE RESPECT

Thomas Jefferson eloquently explained that juries are "the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution." *Letter from Thomas Jefferson to Thomas Paine* (July 11, 1789), The Papers of Thomas Jefferson 15:269 (Julian Boyd ed., 1958). The patriot Patrick Henry echoed the sentiment, "in controversies respecting property, and in suits between man and man, the ancient trial by jury is one of the greatest securities to the rights of the people, and ought to remain sacred and inviolable." William Wirt Henry, *Patrick Henry: Life, Correspondence and Speeches*, 3:594 (1891).

The Constitution did not include a right to jury trial in civil cases, a failure

that almost caused our nation to fall apart before even starting. Desperate to ensure successful ratification by the states, the Federalists launched a massive public relations campaign to assuage concern about the glaring omission. Cumulating in July of 1788 with publication of The Federalist No. 83, addressed to the people of the State of New York, which had not yet ratified the Constitution, Alexander Hamilton confessed, "The objection to the plan of the convention, which has met with most success in this State, and perhaps in several of the other States, is that relative to the want of a constitutional provision for the trial by jury in civil cases." Alexander Hamilton, The Federalist No. 83, *Independent Journal* 289 (1788).

Hamilton conceded that no one at the time of our nation's founding disputed the importance of the right to a jury in civil cases. Rather, the only dispute was whether such a right needed to be expressly provided for in the Constitution:

> The friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury: Or if there is any difference between them it consists in this; the former regard it as a valuable safeguard to liberty, the latter represent it as the very palladium of free government.

*Id*. at 292. To assuage any concerns, the First Congress swiftly, and without much debate, amended the Constitution to add the Seventh Amendment. U.S. Const. Amend. VII.

Both this Court and the Supreme Court have recognized the undeniable truth

that the right to a jury trial in civil cases was and is a bedrock civil liberty to be

protected and preserved with the utmost of deliberate effort. Nearly two centuries

ago, Justice Story wrote for the Supreme Court:

> The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy.

*Parsons v. Bedford*, 28 U.S. 433, 446 (1830) (Story, J.); *see also In re Lockwood*,

50 F.3d 966, 970 (Fed. Cir. 1995). A century later, during the Second World War:

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

*Jacob v. City of New York*, 315 U.S. 752, 752-53 (1942) (Murphy, J.).

Unfortunately, this Court has significantly eroded the right to a jury trial in

patent cases. First, in *Markman*, Judge Mayer said it most aptly in his concurrence:

> Today the court jettisons more than two hundred years of jurisprudence and eviscerates the role of the jury preserved by the Seventh Amendment of the Constitution of the United States; it marks a sea change in the course of patent law that is nothing short of bizarre. Sadly, this decision represents a secession from the mainstream of the law. It portends turbulence and cynicism in patent litigation. For this is not just about claim language, it is about ejecting juries from infringement cases. All these pages and all these words cannot camouflage what the court well knows: to decide what the claims mean is nearly always to decide the case.

> But today's action is of a piece with a broader bid afoot to essentially

banish juries from patent cases altogether. If it succeeds juries will be relegated, in those few cases where they have any presence at all, to rubber stamps, their verdicts preordained by "legal" and "equitable" determinations that brook only one "reasonable" result. Indeed, this movement would vest authority over patent disputes in legislative courts, unconstrained by Article III and the Seventh Amendment.

...

Beyond any policy argument supporting the traditional roles of judge and jury in patent cases, the court's decision today flies in the face of the constitutional right to a jury promised by the Seventh Amendment of the Constitution.

*Markman v. Westview Instruments, Inc.*, 52 F. 3d 967, 989, 992 (Fed. Cir. 1995) (Mayer, J. *concurring*).

Judge Newman commented similarly, "The jury is eliminated. ... Jury trial in patent cases is protected by the Seventh Amendment. Elimination of the jury is not this court's choice to make." *Id.* at 999-1000 (Newman, J. *dissenting*).

While I do not suggest at this time that *Markman* was wrongly decided, I do suggest that the concerns expressed therein regarding the Seventh Amendment are legitimate and deserve consideration. Indeed, the Court in *Markman* specifically recognized the important Constitutional concern and said its effect on juries would be limited to only claim construction. *Id.* at 984 ("Any constitutional concerns raised by this opinion must be limited to the issue of claim construction").

The Court has not, however, limited its erosion of the Seventh Amendment

in patent cases. After *Markman* removed claim construction from juries, rendering them in many patent cases rubber stamps at best, wholly absent at worst, subsequent decisions of the Court have gone further in reducing the role of juries, without so much as any expressed reservation or thought about the damage being caused to the Seventh Amendment.

A recent case highlights the worrying trend. In *I/P Engine v. AOL, Inc.*, __ F.3d __, *15 (Fed. Cir. Aug 15, 2014), the Court reversed a jury verdict containing painstakingly detailed findings on the issue of obviousness because of its own beliefs about what would have been "common sense." Judge Chen rightfully dissented, saying, "In my view, the majority fails to accord sufficient deference to the jury's findings of fact." *Id*. at *30.

The result of precedent like *I/P Engine* is that, today, in too many patent cases, final decisions are made without ever consulting a jury (because, for example, they are decided on summary judgment after claim construction). In those few cases where juries are involved, judges – both district court and appellate – are too frequently overturning jury verdicts without providing the respect and deference they deserve. *See*, *e.g.*, *Parkervision v Qualcomm*, Case No. 3:11-cv-719-Orl-37TEM (M.D. Fl. June 20, 2014) (currently on appeal to the Court) (district court judge overturning jury finding of infringement where defendant did

9

not even call a witness on the issue). Continuing on this course of Seventh Amendment destruction is contrary to public policy. Not only does it conflict with the founder's intent for the Seventh Amendment and Supreme Court precedent, it threatens to further distance the patent system from the American people.

In this case, the Court has the opportunity to reflect on these issues and deliberate over the proper level of deference to provide jury verdicts. I encourage the Court to seriously consider the consequences for the Seventh Amendment and the viability of the patent system should it choose to not provide the jury verdict the respect it deserves.

## CONCLUSION

For these reasons, the Court should take all opportunity to declare, clearly and unmistakably, that unanimous jury verdicts in patent cases deserve respect and should not be overturned without utmost justification after extreme deliberation.


Dated: October 27, 2014                    /s/ Daniel B. Ravicher
                                           Daniel B. Ravicher
                                           Ravicher Law Firm
                                           2000 Ponce De Leon Blvd, Ste. 600
                                           Coral Gables, Florida 33134
                                           (786) 505-1205

                                           *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, indicated below, I caused the foregoing to be filed electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically serve all parties.


Dated: October 27, 2014                    /s/ Daniel B. Ravicher
                                           Daniel B. Ravicher
                                           *Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(d), because it contains 2,156 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of the Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Open Office 3 in Nimbus Roman 14 point font.


Dated: October 27, 2014                      /s/ Daniel B. Ravicher
                                             Daniel B. Ravicher
                                             *Counsel for Amicus Curiae*

12